# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ABDUL MUHAMMAD,**

    **Petitioner,**

v.                                                       Civil Action No 5:17cv70
                                                                (Judge Stamp)

**JOE COAKLEY, Complex Warden,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I.    Procedural Background

On May 23, 2017, the pro se Petitioner, Abdul Muhammad, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. ECF No. 1. The Petitioner challenges the way the Bureau of Prisons ("BOP") calculated his sentence, and seeks prior custody credit from March 21, 2011, until August 19, 2014. In addition, the Petitioner requests that he be transferred from USP Hazelton to a medium security prison.

On June 30, 2017, the Petitioner paid the $5 filing fee. ECF No. 14. On August 16, 2017, following a preliminary review, which determined that summary dismissal was not appropriate, the Respondent was ordered to show cause why the Petition should not be granted. ECF No. 15. On October 14, 2017, the Respondent filed a Motion to Dismiss or, in the Alternative for Summary Judgment, together with a supporting memorandum of law and exhibits. ECF Nos. 20-21. On October 5, 2017, a Roseboro notice was issued. ECF No.24. On November 27, 2017, the Petitioner filed a Response in opposition. ECF No. 29. On December 11, 2017, the Respondent filed a Reply [ECF

1

No. 30], and on December 20, 2017, the Petitioner filed an additional Response. ECF No. 31.  On September 18, 2018, this matter was stayed, and the Respondent was directed to take further action. ECF No. 38. On December 19, 2018, the Respondent filed a second Motion to Dismiss or in the alternative for Summary Judgment with a brief memorandum in support and exhibits.  ECF No. 42-43. On December 21, 2018, an Order was entered lifting the stay. ECF No. 44. On December 26, 2018, a second Roseboro Notice was issued. To date, the Petitioner has not responded.

## II.     Legal Standard

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

2

in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.    Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

### III.    Factual History

On April 22, 2010, the Petitioner was arrested in New Jersey by the Newark Police Department on indictment numbers 10-07-01651-I and 10-07-01604-I, which were unrelated to any federal offense. ECF No. 21-1 at 1, ¶ 2. On February 3, 2011, the Petitioner was released on his own recognizance. Id. After being released on his own recognizance, the Petitioner was arrested in New Jersey on March 21, 2011, by the Newark Police Department for Robbery, Bail Jumping, Possession of a Weapon for Unlawful Purpose, Unlawful Possession of a Weapon, and Leader of Organized Crime, which were related to the federal offense for which he is now incarcerated. Id., ¶ 3. In

addition, he was arrested on warrants for indictments numbers: 10-07-01651 and 10-07-01604. Id. This arrest established primary jurisdiction by the State of New Jersey.

On August 8, 2011, the New Jersey Superior Court, Essex County, dismissed the charges for Robbery, Bail Jumping, Possession of a Weapon for Unlawful Purpose, Unlawful Possession of a Weapon, and Leader of Organized Crime. However, the Petitioner remained in custody because of the pending state indictments 10-07-01651 and 10-07-01604.

On August 15, 2011, while in state custody, the Petitioner was borrowed pursuant to a Federal Writ of Habeas Corpus Ad Prosequendum from the State of New Jersey. ECF No. 21-1 at 20.[1] On October 6, 2011, while still on writ, the New Jersey Superior Court, Union County, charged the Petitioner with Robbery with Bodily Injury, Aggravated Assault with Serious Bodily Injury, Aggravated Assault-Bodily Injury, Possession of a Firearm for Unlawful Purpose, and Possession of a Weapon. ECF No. 22-1 at 20.

On September 26, 2012, the Petitioner was sentenced in the United States District Court for the District of New Jersey to a total of 228 months imprisonment for Interference with Commerce by Threat of Violence (counts 1, 2, & 3) and Knowing Possess Firearms used in Violent Crime (count 4). The court ordered 108 months on counts 1, 2, & 3 to run concurrently, and 120 months on Count 4 to run consecutively to counts 1, 2, & 3. The judgment was silent regarding any relationship with the

---

[1] A Criminal Complaint was filed against the Petitioner on July 11, 2011, in the United States District Court for he District of New Jersey. On May 16, 2012, an Information was filed, and the Petitioner filed a Waiver of Indictment. A Plea Agreement was filed on May 16, 2012, by which the United States agreed to accept a guilty plea from the Petitioner to the four-count Information which charged him with three counts of violating 18 U.S.C. § 1951(a) and Section 2 and one count of violating 18 U.S.C. § 924(a)(1)(A)(ii) and Section 2. See Criminal Case Number 2:12-cr-335-SRC-1 (District of New Jersey) available on PACER.

forthcoming action in state court. ECF No. 21-1 at 22. Based on the primary custody of New Jersey state officials, the Petitioner was returned to state authorities following the proceedings. Id. at 20.

On October 9, 2012, the Petitioner was sentenced in the Superior Court of New Jersey, at Essex County, to five years imprisonment for indictment 10-07-01604 and 10-07-01651. The court ordered indictment 10-07-01604 to run concurrent with 10-07-1651 and the federal sentence.[2] ECF No. 21-1 at p. 6. On August 19, 2014, the Petitioner completed his state term and was released via parole to the custody of the United States Marshal Service to commence service of his federal sentence. Id. at pp. 28, 30.

The Petitioner's federal sentence began on August 19, 2014, the date his New Jersey State sentence expired. He was received in BOP custody on September 29, 2014, and the BOP did a sentence computation for the petitioner and awarded him jail credit from March 21, 2011, through March 23, 2011; and September 27, 2012, through October 8, 2012, as this was credit that was not awarded to his State sentence. ECF No. 21-1 at 32-33. On December 24, 2014, the BOP contacted the Federal sentencing court in response to the Petitioner's request to receive a *nunc pro tunc* designation. Id. at 36-37. A response from the sentencing court was never received. Thereafter, considering all the factors in 18 U.S.C. § 3621(b), the BOP denied a *nunc pro tunc* designation. Id. at 39.  Consequently, the Petitioner's projected release date was calculated as April 21, 2031, via good conduct release.

## IV.   Analysis

---

[2] Although the State Judge ordered the sentence concurrent to his federal sentence, his ruling has no impact on the BOP's sentence calculation. To have accomplished a concurrent sentence, the State of New Jersey would have needed to release the Petitioner into the custody of the United States Marshal Service to begin serving his federal sentence as opposed to confining him to a state prison until his state sentence expired.

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination of when the sentence commenced. United States v. Wilson, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b) which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Id.

Under section 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody while awaiting transportation to, or arrives voluntarily to commence service of the sentence at, the official detention facility at which the sentence is to be served." Where, as here, the prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction is applicable. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him,…and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty…

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting In re Liberatore, 574 F.2d 78 (2d Cir. 1978)).

7

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D.W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.").

However, the fact that a state prisoner is in federal court on a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992) ("A prisoner is not even in custody for the purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.")

Here, the State of New Jersey did not lose its primary jurisdiction over the Petitioner when it lent him to federal authorities pursuant to the writ of habeas corpus *ad prosequendum*. New Jersey maintained primary jurisdiction over the Petitioner until August 19, 2014, when he was released on parole and taken into federal custody for service of his federal sentence. Accordingly, the BOP originally computed the entirety of the Petitioner's 228 month federal sentence to begin on August 19, 2014, the date he was released from New Jersey State

custody into federal custody, with 15 days credit for the period March 21, 2011, through March 23, 2011, and September 27, 2012, through October 8, 2012, because those periods had not been credited against his state sentence. ECF No. 21-1 at 33.

Although a federal prisoner is not entitled to receive credit towards his federal sentence for time that already has been applied to satisfy another sentence, the BOP retains exclusive discretion to designate where a prisoner will be incarcerated and to determine whether the prisoner may be deemed to begin serving his federal sentence while he is in state custody and before he arrives at a federal correctional facility. 18 U.S.C. § 3621(b); U.S. v. Evans, 159 F.3d 908. 911-12 (4th Cir. 1998). Therefore, when the Petitioner requested that his federal sentence be served concurrently with the state term, the BOP considered it as a request for *nunc pro tunc* designation of the state facility for service of his federal sentence.

18 U.S.C.§ 3621(b) grants the BOP discretion to select the place of a federal prisoner's confinement, stating that the agency may "designate any available penal or correctional facility that meets minimum standards of health and habitability. . ., [regardless of] whether [the facility is] maintained by the Federal Government or otherwise. . ., that the [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b). "The phrase 'or otherwise' refers to the BOP's authority to designate federal prisoners to state prisons." Jefferson v. Berkebile, 688 F.Supp.2d 474, 486 (S.D.W. Va. 2010) (citing Evans, 159 Fed

9

3d at 911-12). The statute specifically directs the BOP to consider five factors in making this determination:

1. the resources of the facility contemplated;

2. the nature and circumstances of the offense;

3. the history and characteristics of the prisoner;

4. any statement by the court that imposed the sentence—

    (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility is appropriate; and

5. any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

Accordingly, under the statute, the BOP has the power to order a *nunc pro tunc* designation of a state facility as the place of imprisonment for a federal prisoner, essentially allowing for a retroactive concurrency through which the federal prisoner can receive credit against his federal sentence for time already served in the state facility. Jefferson, 688 F.Supp. 2d at 487 (citing Woodall v. Federal Bureau of Prisons, 432 Fed 3d 235, 245-46 (3d Cir. 2005)).

The BOP's policy on designating a non-federal institution for service of a federal sentence is set forth in BOP Program Statement 5160.05. Normally, designating a non-federal institution for the inmate is done when it is consistent with the Federal sentencing court's intent. ECF No. 19-1 at 78. The sentencing court's intent can be established at the time the sentence is imposed, by way of an order or recommendation, as recorded in a document such as a judgment and

order of commitment. Failing that, an inmate can request a *nunc pro tunc* designation, as the Petitioner did in the instant case.

As part of determining whether to designate a state institution for service of a federal sentence, it is BOP policy to send a letter to the prisoner's sentencing court, with copies to the United States Attorney's office and US probation office in which the BOP inquires as to the sentencing court's position on applying a retroactive designation.  In keeping with this policy, the Designation and Sentence Computation Center ("DSCC") sent a letter to the sentencing judge, dated December 24, 2014, which provided in pertinent part that:

> Should the Court indicate the sentence is to run concurrent with the state term, the Bureau will commence the sentence in the above judgment on the date of imposition, which will result in Mr. Muhammad's release from custody on or about October 7, 2027. The integrity of the Title 18 U.S.C. § 924(c) mandatory consecutive count will be maintained. Should the Court indicate the term is to run consecutive to the state term, he will continue to a current projected release date of February 21, 2031.

ECF No. 21-1 at 37. A response was never received, and the BOP subsequently denied a *nunc pro* tunc designation.

Following review of the pleadings, it became apparent that by the time the letter was sent, Judge Cavanaugh, the federal sentencing judge had already retired. This Court confirmed that Judge Cavanaugh retired on January 31, 2014, nearly one year before the letter was sent. Moreover, the pro se law clerk assigned to this matter contacted the chambers of Judge Stanley R. Chesler, to whom the case was reassigned, and was advised by his courtroom deputy that the Petitioner's file gave no indication that the letter was ever received by Judge Chesler.

While the preference expressed by the Court is but one of the five factors to be considered, it is a pertinent factor as reflected by the language used in the letter sent to Judge Cavanaugh. Accordingly, this matter was stayed, and this Court ordered that the DSCC send a letter to Judge Chesler which mirrored the letter sent to Judge Cavanaugh.

On September 21, 2018, that letter was sent as ordered. On December 11, 2018, the DSCC received response from the sentencing court that stated the federal sentence should run concurrently with the state sentence imposed on the Petitioner. ECFF No. 43-1 at 1, ¶ 2.  Accordingly, a new sentence calculation was completed and certified by DSCC, with the Petitioner's sentence beginning on September 26, 2012, and jail credit awarded for the time from  March 21, 2011, to September 25, 2012. His current projected release date visa good conduct time is December 5, 2027. Id. at 2-3.  Moreover, the Petitioner was designated from the United States Penitentiary at Hazelton, a high security institution, to the Federal Correctional Institution at Hazelton, a medium level institution on December 12, 2018. Id. at 1, ¶ 4.

Article III of the United States Constitution limits the jurisdiction of the federal courts to cases or controversies.  Therefore, a case becomes moot when there is no viable legal issue left to resolve.  See Powell v. McCormick, 395 U.S. 486, 496 (1969). If developments occur during a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-699 (3d Cir. 1996). In the context of a habeas corpus proceeding, the writ "does not act upon the prisoner who seeks relief, but upon the person who

holds him in what is alleged to be unlawful custody." Leonard v. Hickey, 2009 WL 1939174 at 2 (S.D. W.Va. 2009)(quoting Braden v. 30th Judicial Cir. Ct. of Ky, 410 U.S. 484, 494-95 (1973)). If the respondent can no longer provide the requested relief, then the court cannot consider the petition. Id.

In the instant case, the substance of the Petitioner's request was that he be awarded "*nunc pro tunc*" credit against his federal sentence for the time he spent in state custody following imposition of his federal sentence and that he be transferred to a medium security prison. Because of the actions of the DSCC and the BOP following this Court's order of September 18 , 2018, the Petitioner has received the relief he requested, and no further relief can be awarded. Specifically, the Petitioner has now been awarded all the custody credit to which he is entitled[3], and he has been transferred to a medium security facility.

## V.     Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss or for Summary Judgment  **[ECF No. 20]** be **DISMISSED**, the Respondent's Motion to Dismiss or for Summary Judgment **[ECF No. 42]** be **GRANTED**,  and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [**ECF No.** 1] be **DENIED** and **DISMISSED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections

---

[3] The undersigned is aware that the Petitioner argued that he was in the custody of the federal government beginning March 1, 2011, when he was arrested by the Newark Police Department for charges which were related to the federal charges for which he was sentenced by the District of New Jersey. However, as discussed in the body of this Report and Recommendation, the Petitioner was, in fact, in the primary custody of the State of New Jersey until he was paroled on August 19, 2014.

identifying the portions of the Report and Recommendation to which objection is made and the basis for such objection. A copy of such objections should also be submitted to the United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

    The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Petitioner by certified mail, return receipt requested. Furthermore, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED:  January 28, 2019

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE